McKinney, J.
delivered the opinion of the court.
Marcus Mitchell, sr., died in Sept. 1836. By his last will and testament he bequeathed several slaves to his widow, during her life, with remainder to his children, being ten in number. The complainant and defendant, Marcus Mitchell, Jr., ■were nominated executors in said will; the latter, however, only qualified as such. Elizabeth Mitchell, the widow, died in 1845.
The assets which came to the hands of the executor, were insufficient to discharge the debts due from the testator’s estate; and after being exhausted, there remained due to one Ballen-t-ine a debt, the precise amount or character of which does not appear from record; and another to one Ralph Graves, by note under seal, executed by the testator in his life time. There being no funds of the estate to discharge the debts, on the 2d day of February, 1839, Elizabeth Mitchell, the widow, the de *360 fendants, Robert C., Elizabeth Dandridge, and the complainant, agreed to advance, and did, severally, advance, of their own monies, the sum of $146 47 each, in satisfaction of the debt to Ballentine, for which no suit had been brought against the executor, nor had any judgment been obtained. This was done, as is alledged, to save the slaves from being subjected to the payment of said debt, and upon an agreement with the said executor, that the sums so advanced should be reimbursed out of the slaves, at the termination of the life interest. Suit was brought on the bill single due to Graves, for the use of John K. Yerger. It appears that this suit was brought, and that judgment was recovered, jointly, against complainant'and defendant, Marcus, as executor’s of Marcus Mitchell, sen., although the complainant had never qualified as such. And on the 20th of November, 1849, the complainant paid to Thos. S. Webb, sheriff of Giles county, $202 06, in part-satisfaction of said judgment, for which a receipt was executed to him, as executor, by said Webb, who proves the judgment to have been paid by the complainant in that character, though the payment was made out of the individual funds of the complainant. The complainant, in his bill, alledges that he paid other debts due from the estate, but for which no judgments had been obtained, in all amounting to $508 15, including the payment to Webb, and the sum advanced to Ballentine.
The slaves have been sold by order of the chancellor in this cause, and the complainant insists that he shall be reimbursed the said sum of $508 15 out of the proceeds of said sale, before distribution is made among the several legatees, upon the ground that the other legatees are bound to contribute their ratable shares of the sum so advanced. The defendants, Marcus, Robert C., and Elizabeth Dandridge, or the persons to whom they respectively have assigned their interest in said slaves, not admitting the claim of the complainant, likewise insist, upon the same principle, that they should have *361 reimbursed to them, each, the amount advanced to discharge the debt to Ballentine. "The other legatees, who advanced nothing, resist alike the claims of the complainant, and the other defendants, upon several grounds.
The chancellor held, that neither the complainant, nor the defendants, who made advances to discharge the debt to Bal-lentine, were entitled to contribution from the other defendants; nor were they entitled to have the sums so advanced reimbursed out of the proceeds of the sale of the slaves.
From this decree the complainant prosecutes an appeal to this court, and the defendants, Arrowsmith and Meredith, bring a writ of error.
So far as respects the sums advanced to discharge the debt to Ballentine; and likewise so far as respects the several payments made by the complainant, except the payment of $202 06 towards the satisfaction of the judgment in favor of Yerger, we think there is no error in the decree of the chancellor. Prima facie the debt to Ballentine was barred by the act of 1789, at the time of payment; which was made more than two years from the qualification of the executor. There is nothing in this record, that we have perceived, to repel such presumption; and if such were the fact, there could be no claim to contribution for that reason. But, for another reason, no such claim can be asserted in this case. The voluntary payment of the debts to Ballentine, by a portion of the legatees, would, at most, constitute them creditors of the estate, by substitution; and if the right of action were not barred by the statute of two, or' of six years, before the payment to Ballentine, it certainly was barred by both statutes long before the filing of this bill. In regard to the sums thus advanced, the parties stand merely upon the ground of creditors, who have acquired no lien upon the slaves by judgment and execution; or other *362 wise; and we see nothing in. this record to exempt them from the full operation of the statutes of limitation.
But the complainant occupies different ground in reference to the payment made towards the satisfaction of the judgment and execution in favor of Yerger. The creditor, whose judgment was thus satisfied, had acquired a specific lien upon the slaves in virtue of his judgment and execution, and they were legally subject to the satisfaction thereof. The discharge of this lien, therefore, was for the common benefit of all claiming an interest in the slaves, either for life, or in remainder; and upon the plainest principles of equity, all who were thus jointly benefited by the discharge of the judgment, will be held liable to contribute their ratable proportions of the amount paid with interest thereon. Upon the mere ground of substitution to the rights of the judgment creditor, the complainant’s light to relief would be clear, as the creditor would have been entitled to interpose at any time to enforce the satisfaction of his judgment out of the slaves, or their proceeds, before distribution to the legatees.
The decree of the chancellor will, therefore, be reversed, and a decree entered in conformity with the rights oí the complainant as herein declared.